KENNETH BELL ET UX *v.* MID-STATE HOMES, INC.

5-5204                                    453 S. W. 2d 57

Opinion delivered April 27, 1970

*Joe Holmes,* for appellants.

*Spencer & Spencer,* for appellee.

CARLETON HARRIS, Chief Justice. Kenneth Bell and Joan Bell, appellants herein, executed a note and mortgage to Jim Walter Corporation, covering certain property in Cleveland County, Arkansas. On February 24, 1964, a mistake in the description having been discovered a revised note and mortgage were executed, the description being as follows:

Starting at a point on the North right of way boundary of State Highway No. 212, 413 ft. South of the Northwest corner of the SW¼, NE¼ of Sec. 12, Twp. 8 South, Range 12 West. Thence run North 88½ degrees East 1320 ft. along the North right of way

boundary of said highway No. 212 to a point of beginning. Thence North 210 ft. Thence North 88½ degrees East 210 ft. parallel with said highway No. 212. Thence South 210 ft. to the North right of way boundary of said highway No. 212, thence South 88½ degrees, West 210 ft. along the North right of way boundary of said Highway No. 212 to the point of beg. Containing one acre more or less.

On March 7, 1964, Jim Walter Corporation executed an assignment of the note and mortgage to Mid-State Homes, Inc. The Bells became delinquent in their monthly payments, and on July 20, 1967, suit was instituted to foreclose the mortgage. Appellants answered with a general denial and request for admissions were filed and served on the Bells, the latter admitting that they had executed the note and mortgage heretofore mentioned; that they had been delinquent in making payments on the note since March 5, 1967, and that the balance owing on the note was $3,415.62. On February 10, 1969, a decree of foreclosure was entered, and Mid-State Homes, Inc., appellee herein, purchased the property. When appellants refused to surrender possession, a Writ of Assistance was obtained. The Bells filed a motion with the court setting out that appellee did not have a valid description to the property on which the home is located, and occupied by appellants and they desired to show they were not occupying any property for which appellee was seeking a Writ of Assistance.

Appellee filed a response praying that the motion be overruled; that the Writ of Assistance be specifically enforced, and that the erroneous distance be corrected in all papers material to the cause. On hearing, the court held that the motion should be overruled and that the Writ of Assistance should be enforced. From the order so entered, appellants bring this appeal.

The "control point" is shown as a point on the North right-of-way boundary of State Highway No. 212, 1733 ft. South of the Northwest corner of the

SW¼ of the NE¼ of Section 12, Township 8 South, Range 12 West, and from the "control point" on Highway No. 212 the description correctly runs North 88½ degrees East 1320 feet along the North right-of-way boundary of Highway No. 212 to a point of beginning. In comparing this with the description used in the mortgage, we note that the only error is the number of feet from the Northwest corner of the SW¼ of the NE¼, to the North right-of-way of Highway No. 212. In other words, if the figure 413 feet were changed to 1733 feet, the description would cover the property foreclosed.[1] We agree that the control point remains the same since it is fixed as a point on State Highway No. 212, regardless of its distance South of the Northwest corner of the SW¼ of the NE¼. We agree with appellee that actually there would be no error if the distance were not stated at all. At any rate, the fact that the distance from the section corner to Highway No. 212 is incorrectly stated, does not render the description of the tract void. We have held that monuments control over courses and distances. *Arkansas State Highway Commission* v. *Waddell*, 239 Ark. 1103, 396 S. W. 2d 840. In *Garrett* v. *Musgrave*, 215 Ark. 835, 223 S. W. 2d 779, we said:

"The controlling consideration is that if buyer and seller, who are familiar with real property, deal with reference to particular things and places they have seen, it must be presumed that these natural objects were of paramount importance, otherwise they would not have contracted with reference to them."

In the case before us, it will be observed that there are no less than five references to State Highway No. 212, and it would appear that the intention is made evident from the face of the instrument.

At any rate, we are firmly of the opinion that circumstances show that it was the intention of the

[1]For that matter the mistaken description could be corrected by changing Northwest corner of SW¼ of the NE¼ to read Northwest corner of NW¼ of the SE¼. The point on Highway No. 212 lies 413 feet South of this point.

parties to place the mortgage on the property upon which the home is located. The home tract does front on Highway No. 212. Appellants rely upon the testimony of Quenton Bell, the father of Kenneth, the elder Bell testifying that in deeding the acre to his son, he only had in mind "to give my son 1 acre of land wherever the county surveyor put it". He said he did not care whether the one acre tract was on the highway or some other location. Of course, the father knew the son was living in the house on the highway. The error in the description was not discovered until an abstract was prepared, which was subsequent to the time that Quenton Bell executed the deed to his son.

Appellants also point out that the survey was made by appellee's agent, and that appellee was thus responsible for the erroneous description. That is true, but we do not consider that fact as controlling. Rather, the question is what tract of land was intended by the parties to be mortgaged as security for the debt.

We think it clear that the answer to this question is that the parties fully intended that the property, upon which the house was located, be mortgaged to appellee's assignor at the time the mortgage was given. In the first place, one would normally expect this defense, if the intention of the parties had been otherwise, to have been raised by appellants in their answer when the foreclosure suit was filed. Instead of raising this question, appellants simply filed a general denial. The note given to the corporation was in the amount of $6,710.40, and the mortgage was executed as security for that amount. While the record does not reflect the value of lands in Cleveland County, it would certainly be unusual if one acre of vacant property, with no highway frontage, could be valued at that amount.

Prior to the foreclosure, Kenneth Bell testified, but not at any place in his testimony do we find any statement that the intention was to mortgage vacant property rather than the land upon which the house was located. In fact, Bell was asked on cross-examina-

tion if he had not received a letter telling him that appellee would not "foreclose on your home if you paid $202.20", which was the amount needed to make it current. Bell replied, "I am sure I did. I don't remember you stating you would not foreclose. I remember receiving a couple of registered letters from you".

When asked if he received three payments back from the company that he had sent in (but which would not bring the account current), Bell replied in the affirmative. The question was then asked as to what action he took. The witness answered:

"At that time I thought that you had the wrong property description and I thought that if I could talk with you people and get it paid off less attorney's fee then I would borrow the money and pay the thing off and be done with Mid-State Homes but I haven't got anything concrete on what the pay off is yet."

It is thus apparent that Bell at least suspected that the description in the mortgage was erroneous, and that his home actually was not covered by the instrument, but still, *there was no contention that the home property was not to be mortgaged.* The Chancellor himself commented that he was reluctant to enter a foreclosure decree, stating that he had a "great deal of sympathy for a man who is trying to pay for his home", and though rendering a judgment for appellee, gave appellants 30 days in which to refinance the property.

We have held, that to reform a mortgage, the proof must be clear, unequivocal, and convincing. *Arkansas Bank & Trust Co.* v. *Bank of Poplar Bluff,* 166 Ark. 538, 266 S. W. 977.

In *Craig* v. *Pendleton,* 89 Ark. 259, 116 S. W. 209, we held that where a mortgage, through mistake, incorrectly describes the land intended to be mortgaged, the mortgagee was entitled to reforma-

tion against the mortgagor or any subsequent purchaser with notice of the mistake.

From what has been said, it is obvious that we consider the proof to be clear and convincing that it was the intention of all parties to mortgage that property upon which the house is located. We think it well, however, that the instrument be reformed to show the description as "1733 feet" instead of "413 feet".

The decree is affirmed, but the case is remanded for the purpose set out in the preceding paragraph.